McQUEEN *v.* STATE.*

(Division B.  Oct. 25, 1926.)

[109 So. 799.  No. 25845.]

1. BIGAMY. *In prosecution for bigamy, proof by state of ceremonial marriage by person introduced by defendant as minister at parsonage or home of such alleged preacher was sufficient, without proof that minister was ordained or authorized to perform ceremony (Code 1906, section 1051 (Hemingway's Code, section 779]).*

Where, in case of bigamy, the state proved a ceremonial marriage performed by a person introduced as a minister of the gospel by the defendant, the marriage ceremony being performed at the parsonage or home of such alleged preacher in the presence of witnesses, this is sufficient proof of a valid marriage, and the state does not have to show that the minister was, in fact, ordained by his church or authorized by his church to perform such marriage.

2. BIGAMY. *In prosecution for bigamy, corroborating proof of ceremonial marriage under law of Louisiana by showing cohabitation and birth of children is not error (Code 1906, section 1051 [Hemingway's Code, section 779]).*

Where a ceremonial marriage is proved under the law of Louisiana, it is nor error to corroborate such proof by showing the living together as man and wife and birth of children to such persons occupying such relation.

3. CRIMINAL LAW. *In prosecution for bigamy, calling defendant's wife from among spectators in courtroom in presence and hearing of jury for week and having her name listed among state's wit-*

*nesses held not cause for reversal (Code 1906, section 1051 [Hemingway's Code, section 779]).*

It is not reversible error for the state's prosecuting attorney to call the wife of the defendant from among the spectators in the courtroom in the presence and hearing of the jury for the week and have her name listed among those who are witnesses for the state. While this practice is not to be commended, it will not cause a reversal of the case in the absence of other error.

4. INDICTMENT AND INFORMATION. *Defect in indictment, appearing on face thereof, must be taken advantage of by demurrer and not otherwise (Code 1906, section 1426 [Hemingway's Code, section 1182]).*

Defect in an indictment, appearing on the face thereof, must be taken advantage of by demurrer and not otherwise. Hemingway's Code, section 1182 (section 1426, Code of 1906).

5. INDICTMENT AND INFORMATION. *Indictment held to sufficiently negative statutory exceptions (Code 1906, sections 1051, 1052 [Hemingway's Code, sections 779, 780]).*

Conceding for the purpose of this decision, but without so deciding, that it is necessary to negative the exceptions contained in section 780, Hemingway's Code (section 1052, Code of 1906), referred to in section 779, Hemingway's Code (section 1051, Code of 1906), an indictment which charges that the defendant in said county and state on the ―――― day of April, 1924, the said· defendant being then and there a married man, having at the time a lawful, living wife; namely, M., whose maiden name was B., the said defendant did then and there, willfully, unlawfully, and feloniously marry again and take for his wife one Mrs. C. M., whose maiden name was C. B., who was a woman other than and different from the said M., against the peace, etc., it is a sufficient negation of the exceptions referred to in the case before the court.

---

*Corpus Juris-Cyc References: Bigamy, 7CJ, p. 1166, n. 33; p. 1167, n. 34; p. 1171, n. 4; p. 1173, n. 29 New; Criminal Law 17CJ, p. 298, n. 23; Indictments and Informations, 31CJ, p. 722, n. 60, 61; p. 725, n. 90; p. 793, n. 74; p. 818, n. 96; Presumption in favor of ceremonial marriage, see 3 R. C. L. 808; 1 R. C. L. 896; Necessity of negativing exceptions made in statute, see 3 R. C. L. 807; 4 R. C. L. Supp. 217.

APPEAL from circuit court of Pearl River county. HON. J. Q. LANGSTON, Judge.

William McQueen was convicted of bigamy, and he appeals. Affirmed.

*William A. Shipman,* for appellant.

I. *The court below erred in admitting improper evidence on the part of the state, over the objection of the appellant.* Over the objection of the appellant, the state was permitted to prove by the witness William Blanco the birth of children to Mrs. Louise McQueen, their names, their ages, and to identify them in the presence of the jury. The indictment, if it charged any offense, charged the crime of bigamy. There was no issue between the state and the accused relative to the birth or existence of children; the indictment does not affirm such as a fact, nor could the plea of the defendant place in issue such a fact. It was clearly prejudicial to the appellant's case to lug in this irrelevant matter, thereby specifically directing the jury's attention to a fact not in issue.

II. *The court below erred in permitting, over the objection of the appellant, the state's attorney to call the wife of the appellant from among the spectators in the courtroom specifically by name, in the presence and hearing of the jurors for the week; and in including her name among those of the witnesses for the state, she being incompetent to testify against the appellant.* True, the court sustained the objection to her taking the oath, but the damage was already done and it was irreparable. In the very moment following, counsel for the defendant renewed the objection to Mrs. McQueen's sitting with the district attorney and parading in front of the jury as being prejudicial to the defendant and being calculated to arouse hostility in the minds of the jury toward the defendant. This objection was overruled. *Finklea* v. *State,* 94 Miss. 777, 48 So. 1.

III. *The court below erred in refusing the peremptory instruction requested by appellant at the close of*

*the testimony.* We can find no competent and credible evidence or clear proof that the alleged marriage between the appellant and the alleged wife ever occurred. The only witness to testify who professed to know of the marriage is William Blanco. He says that the alleged marriage took place in 1913 on January 29, at the parsonage of the Salem Evangelical Church, a Presbyterian church; that he and three other persons, whose names he mentioned, were present and no one else except the preacher and contracting parties; that defendant and his sister lived together as man and wife; that two children were born to them; that the witness had, about four years prior to the time of the trial, seen the defendant in New Orleans; and that no divorce had ever been granted between them.

While this witness Blanco was still on the stand and at the close of his redirect examination by the district attorney, the latter, with a tremendous flourish, without permitting defendant's counsel to examine him or give him an opportunity to inspect it, announced, ''I now offer a certificate signed by the recorder of marriages, certifying to the marriage between William McQueen and Louise Blanco.'' Of course, the alleged document was inadmissible and the state's attorney without a struggle admitted as much; but he had got to the jury with it all the same by wrongfully stating its contents before giving defendant's counsel a chance to examine it and make his objection; neither did he pretend to have it identified by any witness, had that been necessary; nor was the court given any opportunity to inspect and pass on the admissibility *vel non* of the alleged marriage certificate. We were compelled to object and the jury, of course, jumped to the conclusion that the defendant feared to have it admitted, thus doing the defendant another irreparable injury.

There is nothing in the testimony of any other witness to prove a ceremonial marriage between the defendant and the alleged wife, Louise McQueen. The law of the

state of Louisiana does not recognize common-law marriages. It was error, therefore, for the court to refuse the defendant's request for a peremptory charge.

IV. *The indictment is null and void since it did not by proper averment negative the exceptions contained in section 1051, Code of 1906, and, therefore, charged no offense under the law.* This proposition is no longer an open question in this state. Chapter 211, Laws of 1922 was amended by chapter 245, Acts of 1924; but this amendment (section 4, Acts of 1924) does not purport to abrogate the general rule or to establish a new system, applicable generally to pleading in indictments, but is confined specifically to distilling liquor. The rule announced by this court heretofore, stands unmodified by the amendment. *State* v. *Speaks,* 96 So. 176, construing chapter 211, Laws of 1922.

It is equally true that under the statute (section 1051, Code of 1906) that it is unlawful for every person having a living wife or husband to marry again if such person shall come under the exceptions contained in the statute. See, also, *Dawsey* v. *State,* 100 So. 526.

It is confidentially submitted that under the decisions of this court and the great weight of authority, the indictment fails to charge any offense under the law and, therefore, this case should be reversed. It is true that in the *Speaks case, supra,* a demurrer was interposed to the indictment, but it was not necessary; for in the *Dawsey case, supra,* there was none; the defendant was not so much as represented by counsel. No objection was made in the trial court to the sufficiency *vel non* of the indictment. But failure to object to the sufficiency in the trial court is immaterial, for the very good and sufficient reason that the alleged indictment charges no offense under the law; and an invalid or worthless indictment cannot be validated by mere failure of the accused to object in the court below. The trial court was without jurisdiction to try the appellant and sentence him to punishment under the defective and void indictment.

Exception may be made first in the appellate court where the trial court was without jurisdiction. Section 4936, Code of 1906 (section 3212, Hemingway's Code). See, also, *Hardy* v. *State,* 96 Miss. 844, 51 So. 460; *Rogers* v. *Hattiesburg,* 99 Miss. 639, 55 So. 481; *Cawthon* v. *State,* 57 So. 244; *Xydias* v. *Pittman,* 83 So. 620; *Ex parte Phillips,* 57 Miss. 357; *Spivey* v. *State,* 58 Miss. 743; *Fleming* v. *State,* 60 Miss. 434; *Arbuckle* v. *State,* 80 Miss. 15, 31 So. 437, overruling *Hunt* v. *State,* 61 Miss. 580.

For the reason therefore, that the indictment is void; that it charges no offense known to the law; that the trial court was without jurisdiction; that this question can be raised for the first time in the appellate court—but was, in fact, raised in the court below—in the motion for a new trial, it follows that the trial court erred in overruling the appellant's motion for a new trial; in rendering judgment on the verdict of the jury and sentencing the appellant to be punished for the commission of a crime not charged in the indictment.

*Rufus Creekmore,* Special Assistant Attorney-General, for the state.

I. Our courts have adopted the strict rule that in bigamy cases the state must prove the prior marriage not only beyond a reasonable doubt, but also by direct and positive testimony. Circumstantial evidence and the admissions of the defendant as to his prior marriage when taken alone are insufficient. *Graves* v. *State,* 134 Miss. 547.

In the instant case the state introduced the witness Blanco who supplied the direct and positive testimony of the marriage. He testified that there had been a ceremonial marriage, and that this marriage was solemnized in the presence of at least three witnesses, which was all that was necessary under the Louisiana law to make the marriage valid and subsisting. It was after this testimony was in, that proof was made as to the living to-

gether of the parties as man and wife, the birth of children to them, and the recognition of such children as being legitimate. Such testimony was clearly competent for the purpose of showing that the defendant recognized it to be a valid, subsisting and existent marriage and for the purpose of corroborating the direct proof as to the marriage. 3 R. C. L. 808-809, secs. 22-23; 7 C. J., 1172, sec. 41.

II. Counsel assigns as error the action of the trial court in permitting the wife of the defendant to sit beside the district attorney during the course of the trial. Counsel did not request for nor obtain a bill of exceptions setting forth the matter here complained of by him, and while the facts stated and argued by him in his brief are doubtless true and correct, yet they appear in the record only in scanty detail. He absolutely failed to show wherein his client was prejudiced and we are unable to see how this objection can prevail.

As to the action of the court in permitting Mrs. McQueen to sit beside the district attorney, no special bill of exceptions was taken to show the true facts with reference to this motion but we can gather from the ruling of the court and the reason stated by him in such ruling that Mrs. McQueen did actually remain seated by the district attorney. As to the other facts stated by counsel in his objection and assignment of error as to Mrs. McQueen sitting with her son in her lap and parading back and forth in front of the jury, the record is absolutely silent; but counsel has absolutely failed to show that the jury was influenced in any way by the presence of Mrs. McQueen beside the district attorney, nor is it shown that the defendant's cause was prejudiced in any way on account of her being there.

The Finklea case cited is manifestly not in point. In that case the witness was actually called and was placed on the witness stand and it became necessary for objection to be made to her testimony in the presence of the jury. In the case at bar the defendant's wife was never

called as a witness and no objection was ever made by counsel either to her being sworn or to her sitting beside the district attorney when such objection could be heard by the jury. All the objections of counsel were made in the absence of the jury and it is very probable that the jury never knew why they were withdrawn from the courtroom when these objections of counsel were made.

III. Counsel next argues that this case should be reversed because of the refusal of the court below to direct a verdict in favor of the defendant. The gist of this argument seems to be that the first marriage of the defendant, William McQueen, was not sufficiently proved. In this state the Graves case, cited above, lays down the rule as to the degree of proof required to establish the first marriage. In the case at bar this degree of proof has been amply met. The proof showed a ceremonial marriage solemnized by a minister in the presence of more than three witnesses, the living together of the parties thereafter, the birth of the children to them while so living together, the holding out to the public that they were man and wife, the acknowledgment of the children as being their own, the admission made by the defendant that he had a wife and children in the city of New Orleans, and finally the employment by the defendant of a lawyer for the purpose of obtaining a divorce and the inquiry made of him whether or not it would be all right to marry again.

IV. Counsel next urges that this cause should be reversed because the indictment failed to negative the exceptions in the statute. In support of this argument they cite *State* v. *Speaks*, 96 So. 176; and *Dawsey* v. *State,* 100 So. 526, which cases construe the statute making it a felony to possess a distillery.

Counsel did not raise this point in the court below either by demurrer to the indictment or by motion in arrest of judgment; but now for the first time he presents this point to this court for decision. Although we

consider it too late for him to raise this objection, we do not deem it necessary to go into a discussion of this particular point, because our court has decided the identical question adversely to counsel's contention. *Bennett* v. *State,* 100 Miss. 684, 56 So. 777.

Etheridge, J., delivered the opinion of the court.

Appellant, William McQueen, was indicted, under section 1051, Code of 1906, on a charge of bigamy. The indictment, omitting the formal parts, was in the following language:

". . . Upon their oaths present that William McQueen, in said county and state, on or about the ⸺ day of April, A. D. 1924, the said defendant being then and there a married man and having at the time a lawful living wife; namely Mrs. Louise McQueen, whose maiden name was Louise Blanco, he (the said defendant) did then and there willfully, unlawfully, and feloniously marry again and take for his wife one Mrs. Cornelia McQueen, whose maiden name was Cornelia Burge, and who was a woman other than and different from the said Louise McQueen, contrary to section 1051 of the Mississippi Code of 1906, and against the peace and dignity of the state of Mississippi,'' etc.

No demurrer was filed to the indictment, and the case proceeded to trial.

The testimony for the state showed that a ceremonial marriage was performed between McQueen and Louise Blanco, in New Orleans, La., and was witnessed by the brother of the said Louise Blanco and two young ladies; that the marriage ceremony was performed by a person at the parsonage of the Salem Evangelical Church in New Orleans, La., that this person was introduced by McQueen to the witness and others as a preacher. The said witness said that he had never seen this preacher before or since. It was further testified by said witnesses that McQueen and the woman were married in the man-

ner mentioned and lived together as man and wife, in the city of New Orleans, and were known in the community as such, and that children were born to said marriage.

Thereafter, McQueen left his wife in New Orleans, La., and came to Mississippi. The wife, subsequent to the separation, filed a suit for divorce in New Orleans, La., but could not get service upon the appellant, McQueen. Subsequently McQueen admitted to persons in Mississippi that he had a wife in New Orleans, La., and mentioned the fact that a divorce suit had been filed against him there, and stated that he would see his wife in hell before he would let her have a divorce.

Afterwards McQueen procured a young attorney in Mississippi to find out about the divorce suit in Louisiana, and this attorney learned, on his investigation, that a suit was pending but that no service upon McQueen had been had. McQueen said to other persons that he would not let his wife have a divorce and would not enter an appearance because it was an effort on the part of his wife to procure alimony. McQueen was informed by his attorney, who testified on his behalf in the case, of what he had learned in reference to the divorce suit. McQueen asked his attorney if he would be entitled, under the facts, to remarry in Mississippi, and the attorney informed him that, in his opinion, he would be entitled to marry again because he had been more than five years separated from his first wife.

The state proved a ceremonial marriage in Mississippi, in Pearl River county, with a second woman, Cornelia Burge, and that this marriage was regular in all respects, under the law of this state. The state also introduced the chancery clerk of Pearl River county where McQueen had lived during the time he had lived in Mississippi, and showed that no divorce suit was filed in said county and that no divorce had been obtained in Pearl River county, Miss. McQueen did not testify in his own behalf. There was a trial by jury and a verdict

of guilty, and McQueen was sentenced to the penitentiary for a term of four years, from which he prosecutes this appeal.

It is objected, first, that it was error to admit the testimony of the witness Blanco, as to the birth of children, their names and ages, and identify the children, in the presence of the jury, born to the first marriage. There is no merit in this condition. While this proof, standing alone, under the Louisiana law would not be sufficient, yet it was shown that a ceremonial marriage had taken place, and that the parties lived together as man and wife in Louisiana, under the terms of such marriage. This corroborated other evidence and was admissible as a circumstance tending to show marriage in good faith and the regularity thereof.

It is charged as error that the court erred in permitting, over the objection of the appellant, the state's attorney to call the wife of the said defendant from among the spectators in the courtroom, in the presence and hearing of the jury for the week, and in including her name among those of the witnesses for the state, she being then incompetent to testify against the appellant.

While we held on the former appeal that the witness was incompetent to testify against her husband, it is not reversible error to have her listed among the witnesses, or for her to be in the courtroom during the trial. When the witnesses were called to be sworn, the appellant objected and this objection was sustained by the court. She was not sworn as a witness; however, she sat in the courtroom by the district attorney during the trial, which was objected to, and the objection overruled and exception taken. The trial, under the Constitution, was a public trial, and the former wife had the right to be present, not having been put under the rule as a witness by either side. It may have been an impropriety for her to sit with the district attorney or appear to be interested on that side of the case; still, it is not legal error for her to sit in the courtroom, and it is not shown

that she did anything that could prejudice appellant's legal rights. At the conclusion of the state's testimony, defendant moved that this testimony be excluded and a verdict for the defendant directed.

It is urged that it was error for the court to overrule this because the state did not sufficiently prove the validity of the ceremonial marriage. It is argued that there is nothing to show that the minister who performed the ceremony was a duly ordained minister, or that he was a minister, in fact, and as such entitled to perform marriage ceremonies. As stated above, the proof showed that the marriage took place at the parsonage of a church, by a person in the parsonage introduced as a minister. No authority is cited from Louisiana to the effect that the state must prove the authority of a minister to perform a marriage ceremony as being essential to the validity of the marriage. Our own court has decided that the fact that he was not ordained and authorized by his church to perform the marriage ceremony, which he in fact performed, did not invalidate the marriage; and that is generally the holding of the courts of the country. In the absence of a showing to the contrary, we presume the Louisiana law is the same as that of Mississippi on this subject. *Taylor* v. *State,* 52 Miss. 84.

It is next assigned as error that the indictment is void because it does not negative the exceptions contained in section 1052, Code of 1906 (section 780, Hemingway's Code). Section 779, Hemingway's Code (section 1051, Code of 1906), reads as follows:

"*Bigamy—Defined and Punishment Prescribed.*

"Every person, having a husband or wife living, who shall marry again, and every unmarried person who shall knowingly marry the husband or wife of another living, except in the cases hereinafter named, shall be guilty of bigamy, and imprisoned in the penitentiary not longer than ten years."

Section 780, Hemingway's Code (section 1052, Code of 1906), reads as follows:

"Bigamy—Exceptions. The last section shall not extend to any person whose husband or wife shall have been absent for seven successive years, without being known to such person, within the time, to be living; nor to any person whose husband or wife shall have absented himself or herself from his or her husband or wife, and remained without the United States continually for seven years; nor to any person, by reason of any former marriage which shall have been dissolved by the decree of a competent court, unless the said decree provide that such person shall not be at liberty to marry again; nor to any person, by reason of any former marriage which shall have been pronounced void by the sentence or decree of a competent court, for the nullity of the marriage contract; nor to any person by reason of any former marriage, contracted by such person within the age of legal consent, and which shall have been anulled by the decree of a competent court."

Ordinarily, where a statute contains exceptions within the statute defining the offense, the indictment must negative the exceptions; but where the exceptions are contained in a separate section, or in a separate statute, the indictment need not negative the exceptions. But if we concede that the defendant's position is right, that the indictment ought to negative the exceptions, still the contention cannot prevail here, for two reasons:

First, there was no demurrer to the indictment. Section 1182, Hemingway's Code (section 1426, Code of 1906), requires that:

"All objections to an indictment for a defect appearing on the face thereof, shall be taken by demurrer to the indictment, and not otherwise, before the issuance of the *venire facias* in capital cases, and before the jury shall be impaneled in all other cases, and not afterward," etc.

Second, the averments of the indictment above set out are that the defendant, at the time the second marriage was entered into, was a married man having at that time a lawful living wife, naming her and giving her maiden name, and that she was a different person from the one in the second marriage necessarily negatives the exceptions of the statute. If she was divorced under the exceptions of the statute, or if the marriage was annulled under the exceptions of the statute, she would not be a lawful wife at such time. The indictment is not void on its face, whether it ought to have negatived the exceptions or not. It is sufficiently valid on its face, in the absence of demurrer, to support a trial and conviction. The judgment of the court below will therefore be affirmed.

*Affirmed.*